IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| LIBERTY INSURANCE CORPORATION, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-12-3092 |
| | § | |
| | § | |
| SM ENERGY, *et al.*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND OPINION**

Liberty Insurance Corporation sued to establish its statutory subrogation rights to recover workers' compensation benefits it paid after an oil-field workplace accident killed one of its insured's employees and severely injured another. Liberty paid workers' compensation benefits to the injured employee and the family and estate of the deceased. The workers' compensation beneficiaries sued the employer, as well as the energy company that owned the wells (and that had entered into a contract with the employer), in state court. The parties reached a settlement agreement. At that point, Liberty asserted a right to be reimbursed for the workers' compensation benefits it had paid and to receive a credit for workers' compensation benefits that will be paid in the future. The beneficiaries and the employer asserted that Liberty had contractually waived its subrogation rights. The settlement could not be consummated in the face of Liberty's claim to receive statutory subrogation out of the settlement funds the third-party tortfeasor (premises owner) would pay the beneficiaries. Liberty filed this declaratory judgment suit. The defendants — the estate and family of the deceased employee and the energy company owning the wells — moved for summary judgment that Liberty had waived its subrogation rights against the third-party tortfeasor

and the claimants. Liberty responds that it has not waived its subrogation rights relating to the workers' compensation policy and, even if it has, that it has not waived its separate reimbursement right. Because the state-court case is set for trial on December 10, the parties sought and received expedited consideration.

Based on the pleadings; the motions, response, and reply; the record; the arguments of counsel; and the relevant law, this court grants the defendants' motions for summary judgment. Leonola Hernandez's previous motions for summary judgment are moot. The reasons for these rulings are explained below.

**I.   Background**

SM Energy acquires, explores, develops, and operates properties for oil and gas production. In 2010, SM Energy's parent, St. Mary Land and Exploration Company, entered into a Master Service Contract (MSC) with Select Energy Services, LLC for oil-field work. (Docket Entry No. 11, Ex. 1). In the MSC, Select agreed to indemnify St. Mary, to support its indemnity obligations with insurance,[1] and to ensure that its insurance policies included subrogation waivers in St. Mary's favor.

---

[1] Paragraph 12.1 states:

> Without limiting the indemnity obligations or liabilities of Contractor or its insurer(s), at all times during the term of this Contract, contractor shall, at Contractor's expense maintain, with an insurance company or companies authorized to do business in the state where the Work is to be performed, insurance coverages that comply with the minimum requirements of Exhibit "A" hereto and all insurance coverages that may be required under the laws, ordinances, and regulations of any governmental authority.

(*Id.*, ¶ 12.1). Workers' compensation coverage is among the types of insurance coverage listed in Exhibit "A." (*Id.*, at 15).

The MCS language requiring Select to obtain a waiver of subrogation rights in St. Mary's favor stated:

> All insurance policies of Contractor, whether or not required by this Contract, shall, as respects risks and liabilities assumed by Contractor, waive subrogation against St. Mary group (as defined in Section 11.1), name St. Mary Group as additional insured (except Workers' Compensation coverage), and be primary as respects any other coverage in favor of St. Mary Group.

(*Id.*, ¶ 12.3).

Exhibit "A" to the MSC also states in part:

> For each policy under which Contractor is an assured, whether or not required by this Contract, Contractor, as respects risk and liabilities assumed by Contractor, agrees to waive and agrees to have its insurers specifically waive any rights of subrogation they may have against St. Mary Group**.  It is further agreed that each such policy shall, as respects risks and liabilities assumed by Contractor, be primary as respects any other coverage in favor of St. Mary Group** and that each such policy (other than Worker's Compensation coverage) shall, as respects risks and liabilities assumed by Contractor, specifically name St. Mary Group** as an Additional Insured in connection with this Contract and in connection with any liability directly or indirectly arising out of or in connection with the Work performed by Contractor.  Contractor shall be solely responsible for deductibles required under such policies.  With respect to Worker's Compensation coverage, Contractor agrees to have its insurers specifically name St. Mary Group** as a covered alternate employer.  St. Mary reserves the right to increase the required minimum limits of all policies, at any time, in its discretion.

(*Id.*, at 18).

Select purchased workers' compensation and employers' liability insurance from Liberty. (Docket Entry No. 11, Ex. 2).  The Select-Liberty policy includes a provision headed: "**WAIVER OF OUR RIGHT TO RECOVER FROM OTHERS ENDORSEMENT**."  This endorsement states:

> We have the right to recover our payments from anyone liable for an injury by this policy. We will not enforce our right against the person or organization named in the Schedule. (This agreement applies only to the extent that you perform work under a written contract that requires you to obtain this agreement from us.)
>
> This agreement shall not operate directly or indirectly to benefit anyone not named in the schedule.

(*Id.*, at 41). The "Schedule" listed below the endorsement states: "Where required by contract or written agreement prior to loss." (*Id.*).

On July 14, 2010, an oil-field accident at the Brisco Ranch killed Daniel Hernandez, Sr. and injured Abraham Hernandez. At the time of the accident, they were performing work in the course of their employment with Select Energy, as hired contractors for SM Energy. Liberty made workers' compensation death payments to Leonola Hernandez, on behalf of herself and her son Daniel Hernandez, Jr., and to Kathy Cantu, on behalf of her son Daniel Hernandez. Liberty also paid workers' compensation medical and indemnity benefits to Abraham Hernandez.

Leonola Hernandez, individually, on behalf of Daniel Hernandez, Sr.'s estate, and as next friend of Daniel Hernandez, Jr.; Kathy Cantu, as next friend of Daniel Hernandez; and Abraham Hernandez sued St. Mary and Select in state court for damages arising out of the accident. On October 10, 2012, SM Energy notified the state court that it had reached a settlement with the state-court plaintiffs. *Hernandez v. Select Energy Services, LLC*, 2010-cv-Q001377D1 (49th Dist. Ct., Webb County, Tex. Oct. 10, 2012) (notice of settlement). Liberty asserted statutory subrogation rights to the workers' compensation benefits it has paid the beneficiaries of the deceased employee and to the injured employee, and a credit against the benefits it will pay in the future to the injured employee. (Docket Entry No. 11-4, Ex. A). The settlement cannot proceed if Liberty's claim is found valid; the case is set for trial December 10.

In this federal declaratory judgment suit against SM Energy and the workers' compensation policy beneficiaries, Liberty alleges that, under Texas Labor Code § 417.002(a), the plaintiffs in the state-court suit are required to reimburse Liberty for its workers's compensation payments out of the settlement proceeds they receive from the premises owner. Liberty seeks a declaratory judgment that: it has not contractually waived its right under Texas Labor Code § 417.002(a) to reimbursement of the workers' compensation benefits it paid from the amount the claimants recover in the third-party state-court action; it is entitled to a credit out of the settlement proceeds against benefits it will pay under the workers' compensation policy; and, under Texas Labor Code § 417.002(b), it is entitled to a statutory credit against the claimants who received workers' compensation benefits if the proceeds exceed the reimbursement required under (a).

SM Energy and Leonola Hernandez, in her individual and representative capacities, moved for summary judgment.[2] They argue that summary judgment is appropriate because the policy provision entitled "**WAIVER OF OUR RIGHT TO RECOVER FROM OTHERS ENDORSEMENT**" waives Liberty's statutory subrogation rights in SM Energy's favor and that the MSC required Select to obtain a subrogation waiver from Liberty in its workers' compensation policy. They argue that the policy's subrogation waiver prohibits Liberty from recovering out of the settlement proceeds. (Docket Entry Nos. 6, 11). In response, Liberty first argues that under the MSC, the only subrogation waiver sought and obtained in the policy was for the general liability policy Liberty issued Select, not for the workers' compensation policy. Liberty admits that the Master Service Contract contains a general subrogation waiver but argues that the waiver does not apply to subrogation rights under the workers' compensation policy that Liberty issued. Second,

---

[2] Kathy Cantu and Abraham Hernandez have not moved for summary judgment.

5

Liberty argues that even if there is an enforceable waiver of subrogation in favor of the liable third-party (St. Mary), it would not waive the right of reimbursement against the employee or beneficiary receiving settlement money from the third-party. The court previously granted the defendants' request for expedited consideration of their summary-judgment motions on the basis that a trial is currently set in the state court case for December 10, 2012. (Docket Entry No. 13). The arguments on the waiver issue are discussed below.

## II.     The Summary Judgment Standard

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)). If the burden of proof at trial lies with the nonmoving party, the movant may satisfy its initial burden by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. While the party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, it does not need to negate the elements of the nonmovant's case. *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005) (citation omitted). "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009) (quotation omitted). "If the moving party fails to meet [its] initial burden, the motion [for summary judgment] must be denied, regardless of the nonmovant's response." *United States v. $92,203.00 in U.S. Currency*, 537 F.3d 504, 507 (5th Cir. 2008) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (per curiam)).

When the moving party has met its Rule 56(c) burden, the nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings. The nonmovant must identify specific evidence in the record and articulate how that evidence supports that party's claim. *Baranowski v. Hart*, 486 F.3d 112, 119 (5th Cir. 2007). "This burden will not be satisfied by 'some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'" *Boudreaux*, 402 F.3d at 540 (quoting *Little*, 37 F.3d at 1075). In deciding a summary judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party. *Connors v. Graves*, 538 F.3d 373, 376 (5th Cir. 2008). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

### III.   Analysis

The Texas Workers' Compensation Act generally gives workers' compensation carriers subrogation rights as to claimants. TEX. LAB. CODE § 417.001(b). But carriers may agree to waive their subrogation rights under the Act. *See, e.g.*, *National Union Fire Ins. Co. v. Pennzoil*, 866 S.W.2d 248, 251–52 (Tex. App.—Corpus Christi 1993, no writ) (enforcing an unambiguous subrogation waiver clause); *Chevron U.S.A. v. Cigna*, 1998 WL 472501, at *3–4 (Tex. App.—Beaumont Aug. 13, 1998, pet. denied). "Subrogation rights, when they exist, belong to the subrogated party . . . and are waivable by the insurer — not the insured." *Austin Indep. Sch. Dist. v. H.C. Beck Partners, Ltd.*, 2009 WL 639189, at *2 n. 3 (Tex. App.—Austin Mar. 13, 2009, pet. denied); *see also Approach Operating, LLC v. Resolution Oversight Corp.*, 2012 WL 2742304, at *2 (Tex. App—Austin July 3, 2012, no pet. h.).

7

### A. Whether the Subrogation Waiver Applies to The Workers' Compensation Policy

Liberty argues that the language of the policy it issued Select and of the Select-St. Mary MSC do not make the waiver of subrogation rights extend to the workers' compensation coverage but only the general liability coverage. The policy provision on waiver states that Liberty will not enforce its subrogation right against those "named in the Schedule." The "Schedule" states: "Where required by contract or written agreement prior to loss." The MSC between St. Mary and Select states: "For each policy under which Contractor is an assured, whether or not required by this Contract, Contractor, as respects risk and liabilities assumed by Contractor, agrees to waive and agrees to have its insurers specifically waive any rights of subrogation they may have against St. Mary Group**. . . ." Liberty argues that the subrogation waiver is contractually limited to the "risks and liabilities assumed by the Contractor." It contends that these "risks and liabilities" are only those covered by third-party liability insurance and do not include liabilities covered under Liberty's workers' compensation policy. Liberty states that "risks and liabilities" are defined in Section 11 of the MSC, (Docket Entry No. 14, at 7). But Liberty does not point to specific language in Section 11 that support its argument. The court assumes, as the defendants have, that Liberty intended to refer to Paragraph 11.2, which defines Select's indemnification obligations.

In construing a written contract, "[t]he primary concern of a court . . . is to ascertain the true intentions of the parties as expressed in the instrument." *Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 133 (Tex. 1994). To ascertain the parties' intent, the court "examine[s] the entire document and consider[s] each part with every other part so that the effect and meaning of one part on any other part may be determined." *Heritage Resources, Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996).

Paragraph 11.2 is broad. It states, in relevant part:

> 11.2 <u>Contractors Indemnification</u>: Contractor agrees to release, defend, indemnify and hold harmless St. Mary Group from and against any and all Claims, Losses, and Expenses directly or indirectly arising out of or related to bodily injury or death of, or damage to property of, Contractor Group in any way, directly or indirectly, arising out of, or related to, the performance or subject matter of this Contract . . . and expressly including any Claims Losses or Expense actually or allegedly resulting from the negligence or fault of St. Mary Group or any other person or entity. The indemnity obligations set forth in this Section shall include any medical, compensation or other benefits paid by St. Mary . . . in connection with employees of Contractor.

(Docket Entry No. 11, Ex. 1, ¶ 11.2).[3] The MSC in turn defines "Claims, Losses and Expenses" as follows:

> The term "Claims, Losses and Expenses" shall mean all claims, demands, causes of action, liabilities, damages, judgments, fines, penalties, awards, losses, costs, expenses (including, without limitation, attorneys' fees and costs of litigation) of any kind or character arising out of, or related to, the performance of or subject matter of this Contract (including, without limitation, property loss or damage, personal or bodily injury, sickness, disease or death, loss of service and/or wages, or loss of consortium or society).

(*Id.*, ¶ 11.1(c)).

The state-court suit is a claim against St. Mary "arising out of or related to bodily injury or death" of Select's employees for "medical, compensation or other benefits." (*Id.*, ¶ 11.2). Under

---

[3] "Contractor Group" is defined to include Select's employees:

> The term "Contractor Group" shall mean: (i) Contractor, (ii) its parent, subsidiary and affiliated or related corporation(s), partnership(s), and limited liability companies; (iii) the contractors and subcontractors (of every tier) of (I) and (ii) above; and (iv) the officers directors, shareholders, *employees*, agents, assigns, representatives, managers, and consultants of all of the foregoing."

(*Id.*, ¶ 11.1(b)) (emphasis added).

the unambiguous language of the MSC, Select assumed St. Mary's liability in that suit.

Liberty also argues that Paragraph 12.3, which states in part that Select must "name St. Mary Group as additional insured (*except Workers' Compensation coverage*)," (*Id*., ¶ 12.3), means that the MSC does not waive Liberty's subrogation rights to claims by a workers' compensation carrier. (Docket Entry No. 14, at 7). Liberty contends that the MSC requires Select to obtain a subrogation waiver on liability policies for which St. Mary is an additional insured. The MSC does not support this interpretation.

Paragraph 12.3 requires that "all insurance policies" obtained by Select must contain a subrogation waiver — not just those policies for which St. Mary was required to be named as an additional insured. (Docket Entry No. 11, Ex. 1, ¶ 12.3). Workers' compensation coverage is not exempt from this requirement. Liberty also distinguishes third-party liability insurance from first-party workers' compensation insurance. It argues that only third-party insurance covers Select's indemnity obligations. (Docket Entry No. 14, at 7). The contract does not make this distinction. Workers' compensation coverage is listed, along with liability insurance, among the policies that Select is contractually bound to obtain to satisfy its obligation under the MSC to indemnify St. Mary. (Docket Entry No. 11, Ex. 1, at 15). The placement of the phrase "except workers' compensation coverage" indicates that it was intended to relieve Select of any responsibility for naming St. Mary as an additional insured. No such exception applies to Select's obligation to obtain insurance policies that waive the insurer's subrogation rights in St. Mary's favor.

Liberty's policy and motive-based arguments for exempting it, as a workers' compensation carrier, from the general contractual subrogation waiver are unpersuasive. Liberty argues that finding the absence of a waiver of subrogation rights would benefit Select by reducing its insurance costs and would prevent injured employees from receiving windfalls:

> [I]t is reasonable to assume that if one of [Select's] employees file suit against a party for which it agreed to indemnify, that [Select] would want its insurance carrier to recover reimbursement interest out of its employee's recovery.  This is because such a recovery by Liberty would benefit [Select] by improving its experience rating, and correspondingly lowering its worker's compensation insurance rates. . . [A]ll a waiver of subrogation as to worker's compensation benefits would accomplish is potentially afford a double recovery to the Claimants, individuals who were not parties to the MSC.

(Docket Entry No.14, at 10).  Liberty does not point to any summary-judgment evidence supporting its description of Select's and St. Mary's motives during the bargaining process.  Nor does Liberty explain why subjective motivations bear on interpreting the unambiguous language of the MSC. *See Sun Oil Co. (Delaware) v. Madeley*, 626 S.W.2d 726, 732 (Tex. 1981) (holding that extrinsic evidence is not permitted to vary the terms of an unambiguous contract).

Liberty cites one case in support of its interpretation of the MSC, *Reliance Ins. Co. v. Hibdon*, 333 S.W.3d 364 (Tex. App.—Houston 2011, Pet. denied). *Reliance* arose from RME Petroleum's contract with Grey Wolf Drilling to drill a well.  The contract required Grey Wolf to obtain certain insurance policies and to name RME as an additional insured.  The contract also required Grey Wolf to secure a subrogation waiver for these policies in RME's favor.  Grey Wolf obtained insurance from Reliance.  A Grey Wolf employee was injured during the course and scope of his employment.  The employee received benefits from Reliance, which Grey Wolf reimbursed. After the Grey Wolf employee filed a third-party action against and settled with RME and its employee, John Hibdon, Reliance sued RME and Hibdon for reimbursement.

Among the issues facing the *Reliance* court was Hibdon's argument that Reliance's subrogation waiver in RME's favor also benefitted Hibdon, as RME's employee.  The court held that the subrogation waiver was not effective as to Hibdon because the RME-Grey Wolf contract did not specify that Grey Wolf was required to obtain subrogation waivers favoring RME's

employees. Liberty argues that *Reliance* is relevant to this case because it is "instructive on the specificity needed in the contract language to trigger the waiver endorsement." (Docket Entry No. 14, at 8).

The facts of *Reliance* are readily distinguishable. In the present case, Liberty is asserting its subrogation rights against the injured employee of its insured; in *Reliance*, the insurer "assert[ed] its rights against the negligent employee of the third-party [tortfeasor] company." *Hibdon*, 333 S.W.3d at 371. In *Reliance*, there was no evidence from the RME-Grey Wolf contract language showing that the parties had intended to waive subrogation in favor of RME's employees. In this case, by contrast, the MSC language unambiguously shows that the parties intended to require that Select's insurance carriers waive subrogation rights in St. Mary's favor with respect to any "risks and liabilities" Select assumed. Those risks and liabilities include those at issue here. Neither the policy nor the MSC support Liberty's argument that it waived subrogation rights under the general liability policy but not the workers' compensation policy.

**B. Whether Waiver of a Worker's Compensation Carrier's Subrogation Rights Waives Both Its Right to Recover Against a Third Party and Its Right to Reimbursement From a Claimant**

Liberty argues that even if it waived its subrogation rights under the workers' compensation policy, it maintained its right to seek reimbursement from the claimants. The cases hold, however, that a policy statement that the insurer would not "enforce our right against the persons or organization named in the Schedule" includes a waiver of any right to seek reimbursement or setoff from payments to an injured employee as to any money paid by or on behalf of an organization listed in the Schedule. *See, e.g.*, *Am. Risk Funding Ins. Co. v. Lambert*, 59 S.W.3d 254, 259 (Tex. App.—Corpus Christi 2001, pet. denied); *Lumbermens Mut. Cas. Co. v. Carter*, S.W.2d 912 (Tex. App.—Beaumont 1996, no writ); *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Pennzoil Co.*, 866

S.W.2d 248 (Tex. App.—Corpus Christi 199, no writ); *Trejo v. Alter Scrap Metal, Inc*., 2010 WL 2773397 (S.D. Miss. July 13, 2010).

Liberty contends that a subrogation right, which it defines as "the right provided the carrier to bring a direct action against a liable third party in the name of the injured employee," is distinct from a reimbursement right, which it says is "a right against the employee, not the third party, to recover the amount of benefits paid out of the employee's recovery after he has made the recovery, and a right to a credit against future benefits . . . ." (Docket Entry No. 14, at 12). It argues that Texas Labor Code § 417.001(b) creates a subrogation right and § 417.002(a) creates a reimbursement right.[4] *(Id.)*. Texas Labor Code § 417.001 — entitled "Third-Party Liability" — describes the rights of injured employees to "seek damages from a third party who is or becomes liable" and to file workers' compensation claims. TEX. LAB. CODE § 417.001(a). If an employee claims workers' compensation benefits, "the insurance carrier is subrogated to the rights of the injured employee . . . ." TEX. LAB. CODE § 417.001(b). This subrogation interest is enforceable in several ways. An insurer may "enforce the liability of the third party in the name of the injured employee . . . ." TEX. LAB. CODE § 417.001(b).[5] An insurer may also recover the benefits it has paid

---

[4] To the extent Liberty also contends that its subrogation waiver does not include its right to future credits, this court follows the decisions of two Texas appellate courts in holding that a waiver of the right to subrogation includes both a right to reimbursement for past expenses and a right to future credits. *See Hartford Accident & Indem. Co. v. Buckland*, 882 S.W.2d 440, 444–56 (Tex. App.—Dallas 1994, writ denied); *Lambert*, 59 S.W.3d at 259.

[5] Texas Labor Code § 417.001(b) states in full:

> If a benefit is claimed by an injured employee or a legal beneficiary of the employee, the insurance carrier is subrogated to the rights of the injured employee and may enforce the liability of the third party in the name of the injured employee or the legal beneficiary. The insurance carrier's subrogation interest is limited to the amount of the total benefits paid or assumed by the carrier to

from an injured employee who files a third-party suit. TEX. LAB. CODE § 417.002(a) ("The net amount recovered by a claimant in a third-party action shall be used to reimburse the insurance carrier for benefits, including medical benefits, that have been paid for the compensable injury."); *see also Texas Mut. Ins. Co. v. Ledbetter*, 251 S.W.3d 31, 35 (Tex. 2008) (discussing these two methods of recovery). Section 417.002 does not refer to a separate reimbursement right. In the context of a claimant's third-party suit, the term "reimbursement" is used to describe the amount owed to an insurance carrier "for benefits . . . that have been paid for the compensable injury." TEX. LAB. CODE § 417.002(a). But an insurer suing in an injured employee's name may also "reimburse itself" out of the recovery. TEX. LAB. CODE § 417.001(b)(1). The term "reimbursement" is used in both instances.

Liberty notes that the Workers' Compensation Act provides different methods for calculating and paying attorney's fees and for calculating payments and reductions based on whether an insurance carrier or injured employee initiates a third-party suit. (Docket Entry No. 14, at 14–15). Liberty argues that this supports its view that Liberty has separate subrogation and reimbursement rights. The Workers' Compensation Act provides for *three* methods of calculating attorney's fees in third-party actions, depending on whether an insurance carrier with subrogation rights is not actively represented, is represented by the same attorney as the claimant, or is represented by an

---

the employee or the legal beneficiary, less the amount by which the court reduces the judgment based on the percentage of responsibility determined by the trier of fact under Section 33.003, Civil Practice and Remedies Code, attributable to the employer. If the recovery is for an amount greater than the amount of the insurance carrier's subrogation interest, the insurance carrier shall: (1) reimburse itself and pay the costs from the amount recovered; and (2) pay the remainder of the amount recovered to the injured employee or the legal beneficiary.

14

attorney who actively participates in obtaining recovery. TEX. LAB. CODE § 417.003. Liberty does not point to any language from the Workers' Compensation Act's attorney's fees provisions that suggest that some attorney's fee rules are intended to compensate an insurance carrier for exercising an independent reimbursement right, while others compensate attorneys in the exercise of subrogation rights. The attorney's fee provisions provide for different rules depending on an insurance carrier's role in a claimants' recovery of damages from third parties. This is not evidence of a reimbursement right.

Courts applying Texas law do not distinguish between a carrier's subrogation and reimbursement rights in the Worker's Compensation Act context. These courts regularly refer to both § 417.001(b) and § 417.002(a) in the context of "subrogation" rights. *See, e.g.*, *Ledbetter*, 251 S.W.3d at 37 (stating that "a carrier is entitled to *reimbursement*" in a "carrier's *subrogation* claim" (emphasis added)); *Approach Operating*, 2012 WL 2742304 (applying §§ 417.001(b) and 417.002(a) in the context of a "subrogation" dispute); *Hibdon*, 333 S.W.3d 364, 372–78 (framing as a dispute over a workers' compensation carrier's "subrogation rights," a carrier's suit seeking reimbursement from an employee who had previously recovered in a separate third-party suit); *City of Houston v. Soriano*, 2006 WL 2506388 (Tex. App.—Houston [14th Dist.] Aug. 29, 2006) (discussing in terms of "subrogation rights" a declaratory judgment action filed to settle a dispute over a self-insurer's subrogation liens against its injured employees' recovery in a previous third-party suit).

Liberty cites *Fortis Benefits v. Cantu*, 234 S.W.3d 642 (Tex. 2007). In that case, Cantu sued after suffering injuries in a car accident. Fortis, her medical insurer, intervened and asserted contractual subrogation and reimbursement rights. After Cantu settled, Cantu and Fortis disputed how the settlement proceeds should be divided. Cantu's insurance policy with Fortis included two

separate provisions providing Fortis with a "subrogation right" and a "right of reimbursement." Under the subrogation provision, Fortis was "subrogated to all rights of recovery a Covered Person may have against any person or organization." *Id.*, at 646 n. 11. The reimbursement provision stated: "We have a right to recover from that Covered Person an amount equal to the amount We have paid." *Id.*

The reimbursement right discussed in *Fortis* was created through a contractual provision. *Id.* at 651 ("The contract's specific language controls Fortis's right to subrogation . . . ."). Statutory subrogation under the Workers' Compensation Act did not apply. In this case, Liberty's rights are defined primarily by statute. As the *Fortis* court noted, "[t]he three varieties of subrogation — equitable, contractual, and statutory — represent three separate and distinct rights that, while related, are independent of each other." *Id.* at 648. The workers' compensation policy between Liberty and Select did not define the relevant terms separately from their use in the statutes.[6]

In sum, the defendants' motions for summary judgment are granted because they have shown that, based on the undisputed facts in the record and the applicable law, Liberty contractually waived its statutory right to subrogation as to the workers' compensation benefits paid to the defendant employee and beneficiaries. The arguments and evidence Liberty has presented do not raise a fact issue as to the waiver; show that the waiver applied only to general liability as opposed to workers' compensation coverage; show that the waiver was limited to recovery from the third-party tortfeasor

---

[6] Liberty also points to decisions from other jurisdictions that distinguish between subrogation and reimbursement rights. *See, e.g.*, *Teichman by Teichman v. Community Hosp. of Western Suffolk*, 663 N.E.2d 628 (N.Y. 1996); *A. Copeland Enters. v. Slidell Mem'l Hosp.*, 657 So.2d 1292, 1298–99 (La. 1995). *Champion v. Montgomery Elevator Co.*, 493 N.W.2d 244 (Wis. Ct. App. 1992). But other court have held that "reimbursement is encompassed within the concept of subrogation." *Cont. Western Ins. Co. v. Swartzendruber*, 570 N.W.2d 708 (Neb. 1997). Definitions of subrogation and reimbursement adopted by non-Texas courts applying equitable rather than statutory principles are of limited assistance in this case.

as opposed to the workers' compensation claimants; or allow Liberty to receive either reimbursement for benefits it has paid or credit for benefits it will pay in the future.

**IV.     Conclusion**

For the reasons stated above, the defendants' motions for summary judgment, (Docket Entry Nos. 6, 11), are granted. Leonela Hernandez's previous motions for summary judgment, (Docket Entry Nos. 7, 9), are moot.

SIGNED on December 7, 2012, at Houston, Texas.

Lee H. Rosenthal
United States District Judge